**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JAYAKAR JOHN** ) | **CASE NO.: 3:21-cv-1285** |
|     **Plaintiff,** ) | |
| ) | |
|   **v.** ) | **COMPLAINT** |
| ) | |
| **WALMART STORE No.: 2585 and** ) | |
| **WALMART STORES EAST, LP., et al.,** ) | **September 23, 2021** |
|     **Defendants.** ) | |

<u>**COMPLAINT**</u>

## I.    <u>JURISDICTION AND VENUE</u>

1.  This is an action for damages and other equitable relief arising under 42 U.S.C §

1981, Title VII of the Civil Rights Act of 1964 as Amended-42 U.S.C. § 2000e-2, *et seq*, and

the common law of the State of Connecticut.

2.  This Court has jurisdiction of this controversy by virtue of 42 United States Code §

1981, Title VII, 42 U.S.C. § 2000e-2, and by virtue of this Court's powers and authority to hear

pendent state law claims.  The Court has personal jurisdiction over the Parties pursuant to 28

U.S.C. § 1391 and 28 U.S.C. §1392, and venue is appropriate in this district, given that all or a

substantial part of the events or omissions giving rise to these claims occurred in Connecticut.

## II.    <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

3.  The Plaintiff has exhausted his administrative remedies before the Equal

Employment Opportunities Commission **(EEOC Charge No.: 16A-2019-01528)** on June 25,

2021. **Exhibits # 1**

### III.     **PARTIES**

4.   **The Plaintiff, Jayakar John** (hereinafter, Jay John, the Plaintiff) is an African American male, and for all relevant times, he was an employee of Defendant Walmart Stores.

5.   At all times relevant herein, the Plaintiff has been a resident of Connecticut.

6.   The Plaintiff was hired by Defendant Walmart on or about March 2, 2001, as an Assistant Operations Manager.

7.   **Defendant, Walmart Stores, East, LP.,** is the operating company for Walmart Store Number 2585, and its address is 702 SW 8th St. Bentonville, AR 72716-6299.

8.   On information and belief, Walmart Stores East, LP., is the holding company for the Plaintiff's "home store, and that of James Rhine, the Plaintiff's immediate supervisor.

9.   **Defendant, Walmart Stores,** Number 2585 for all relevant times is located at 150 Barnum Avenue, Stratford, Connecticut.

10. On information and belief, this store was the "home store" of the Plaintiff and his immediate supervisor, James Rhine.

11. By virtue of his position, and his conduct herein, James Rhine was an official/manager of Defendants Walmart Stores, East LP, and Walmart Store, Number 2585.

12. On information and belief, James Rhine was and acted as the agent for Defendants Walmart Stores, East LP, and Walmart Store, Number 2585, and his conduct was binding upon the defendants.

13. **James Rhine,** for all relevant times was the Plaintiff's immediate supervisor/manager at the Stratford, Connecticut store of Walmart from 2016 to Plaintiff's constructive quit in 2019.

14. As the Plaintiff's manager, Rhine was responsible for the Plaintiff's assignments and

performance evaluations.

15. James Rine had made comments to other coworkers about his interest in terminating the Plaintiff, without basis.

16. In the past also made comments such as his plans to refuse the Plaintiff's time off requests.

17. On information and belief, James Rhine has expressed his dislike and animus for African American males.

18. On information and belief, James Rhine has taken retaliatory action against the Plaintiff, by virtue of his lodging policy violation complaints against Rhine.

19. For the three years prior, the Plaintiff has performed his job in a better than satisfactory manner, yet James Rhine has persistently rated the Plaintiff as "Development Needed, often lacking customary feedback," forming the basis for denying raises to the Plaintiff.

20. On information and belief/, James Rhine has subjected two other African American Assistant Managers to the same conduct, and similarly denied them raises, under circumstances where White Assistant Managers were not subject to the same or similar situation and received raises.

21. Upon information and belief, the Plaintiff's employment evaluations were suspiciously identical to evaluations received by another African American Managers, as compared to their White comparators.

22. Upon the arrival of James Rhine at Walmart Store Number 2585, the Plaintiff's immediate supervisor was Robin Maleky, a White female.

23.   On information and belief, after Ms. Maleky had completed the Plaintiff's evaluation, while James Rhine was absent on vacation, upon his return, he reversed the Plaintiff's evaluation rating from satisfactory to "Development Needed," during Ms. Maleky's absence.

24.   Pursuant to Defendants' rating policies, practices and procedures, after receiving an initial evaluation with a rating of "Development Needed," an employee should receive a Performance Action Plan to improve performance. After a second evaluation is completed, the employee in question with a rating of "Development Needed," should then receive another Performance Action Plan, which provides the employee thirty (30) days to improve his performance, or risk demotion or termination.

25.   On information and belief, the Plaintiff was not placed on this plan, as compared to his comparators.

26.   During the Plaintiff's tenure, he has had to make numerous complaints against James Rhine to Defendants "marketing Team.

27.   By way of background, I have made multiple complaints to Respondents Market team about the actions taken against me by Defendant Rine.

28.   On information and belief, the complaints that were made by non-basis employees resulted in removal of contested disciplinary actions and transfers, while the Plaintiff's complaints yielded no result.

29.   On or about January 14, 2019, during a manager's meeting, Rine publicly admonished and berated the Plaintiff before his colleagues for delegating the cleaning of the manager's area to an associate, "rather than doing it himself and on his knees." That when the Plaintiff retorted that the area was clean by an associate, Rhine further stated that, "when I tell you to clean the area on your knee, that is what you do."

30.    During this public and demeaning tirade, Rhine admonished that "when I delegate to you, I expect you to complete it yourself."

31.    Approximately twenty (20) minutes after this public embarrassment, Rhine informed the Plaintiff that "he had changed the Plaintiff's work schedule."

32.    Prior to this "change," the plaintiff had been approved to work a modified schedule from 9:00 a.m. to 7:00 p.m. on his workdays, to accommodate his childcare responsibilities.

33.    Defendant Rhine, had apparently changed the Plaintiff's accommodated schedule and mandated him to work from 8:00 a.m. to 6:00 p.m.

34.    When the Plaintiff inquired why his accommodated schedule was changed by Rhine, he stated that "had he not made the change, he would have been forced to accommodate everyone else.

35.    Upon information and belief, multiple adjusted or accommodated schedules made and maintained at the Plaintiff's store location, and other Walmart stores within the same market area.

36.    Although the Plaintiff resolved to contact, the Market Manager to discuss the change Rhine made to his accommodated schedule, he was unable to reach her, and he was not contacted by her subsequently regarding the issue.

37.    On or about February 2, 2019, Rine and the Store Manager at Walmart Number 2585 summoned him to a meeting "in the office," to discuss, among other matters, an incident that occurred in or around November of 2018, where a vendor left beverages at the store to distribute to associates.

38.    As this very circumstance had arisen before, and Rine was one of the chief protagonists of this practice, because he had distributed beverages left by vendors to employees.

39. As a result of this incident, Defendant Rine issued me an "Ethics Ticket" (a warning) alleging that the Plaintiff's actions violated Defendants' policy.

40. In response, the Plaintiff explained that he did not violate Defendants' policy, but rather engaged in the same conduct as Rhine and others engaged in previously.

41. The Plaintiff further complained to Rhine that he believed he was intentionally discriminated against, and that then "Ethics Ticket" was intended to sabotage his chances for advancement in the company, because of his expressed animus towards Black men

42. The Plaintiff at all times suffered emotional injury due to the incessantly hostile working conditions he has been subjected to by Defendants through their agent, Rhine.

43. As a result of the treatment accorded the Plaintiff, he was forced to seek medical treatment.

44. As a result, on or around February 4, 2019, the Plaintiff was sought treatment and was granted permission from his medical professionals to request a leave of absence.

45. On in formation and belief, the Plaintiff believed he was and had been "set up" by Rhine for termination, consistent with his previously expressed animus towards black men, as the Plaintiff.

46. That James Rine had made comments to other coworkers about his interest in terminating the Plaintiff, without basis.

47. In the past also made comments such as his plans to refuse the Plaintiff's time off requests.

48. On information and belief, James Rhine has taken retaliatory action against the Plaintiff, by virtue of his lodging policy violation complaints against Rhine.

49. As a result of the conduct complained of herein, the Plaintiff has suffered lost substantial income, lost employment opportunities, lost wage increases, lost promotional opportunities, emotion and psychological injury, and lost benefits.

50. On information and belief, no other non-basis employees were subjected to similar harassment and discrimination in the manner that the Plaintiff was due to his race (African American), color (Black), sex (male), and previous opposition to discrimination.

51. On information and belief, the Plaintiff was discriminated against in the terms and condition of his employment based on his race (African American), color (Black), sex (male), and previous opposition to discrimination.

**COUNT ONE:  VIOLATION OF 42 U.S.C. §1981 S AGAINST DEFENDANTS WALMART STORE # 2585 AND WALMART STORES EAST, LP., THROUGH THEIR AGENTS.**

52. Mr. John, the Plaintiff repeats, realleges and incorporate by reference the allegations set forth in paragraph 1 through 51, inclusive, as though fully set forth herein.

53.  Defendants subjected the Plaintiff to invidious discrimination based on his race-black and color, and his sex-male, because of his membership in the aforementioned protected class in violation of 42 U.S.C. §1981.

54.  The Defendants subjected the Plaintiff to adverse employment action with respect to his right to make and enforce his employment contract in violation of 42 U.S.C. §1981.

55. That the Plaintiff's work performance was satisfactory and was intentionally labeled the Plaintiff "Development Needed, often lacking customary feedback," forming the basis for denying raises to the Plaintiff. by Defendants' agents James Rhine and others, to thwart his progress and his employment opportunities.

56.  That the defendants conduct was intended to interfere with and did interfere with the performance and enforcement of the Plaintiff's employment contract.

57. The defendants' acted intentionally or recklessly to violate the Plaintiff's right to equal treatment under Federal law as it pertained to his right to make and enforce his employment contract, perform, modify, and terminate contracts, and to enjoy all benefits, privileges, terms, and conditions of the contractual relationship.

58.  All-natural person agents were acting in their capacities as officials, managers, and agents of Defendant Walmart Stores East, LP and Walmart Store Number 2585.

59.  The defendants by their conduct failed to provide adequately training to their subordinate employee regarding the right to equal employment opportunities and treatment in

accordance with law.

60.  That soon after James Rhine arrived at the Stratford store, he engaged in a concerted effort to demean, berate, the Plaintiff and other similarly situated black employees, as compared to their White similarly situated colleagues.

61. That in some instances, the Plaintiff was specifically instructed "to clean certain sections of Walmart Store number 2585 on his knees," by James Rhine. That when the Plaintiff retorted that the area was clean by an associate, Rhine further stated that, "when I tell you to clean the area on your knee, that what you do."

62. That the Plaintiff was subjected to unequal treatment with respect to his employment contact and relationship with the defendants, and for all times relevant, James Rhine was employed by the Defendants and supervised the Plaintiff.

63.  That these conduct and other complained of were intentionally intended to and did serve to discriminate against the Plaintiff on the basis of his race, color, and sex.

64.  That Defendants' agent James Rhine was known to hate Black men.

65.  That for all times relevant, James Rhine treated similarly situated White employees differently, and better.

66.  That due to the circumstances complained of herein, the Plaintiff was forced on numerous occasions to complaint to James Rhine's superiors, and that no meaningful remedies were provided the Plaintiff.

67. That James Rine had made comments to other coworkers about his interest in terminating the Plaintiff, without basis.

68.  In the past also made comments such as his plans to refuse the Plaintiff's time off requests.

69. On information and belief, James Rhine has taken retaliatory action against the Plaintiff, by virtue of his lodging policy violation complaints against Rhine.

70. That these retaliatory actions included but were not limited to increasing the Plaintiff's work hours, taking actions against him, where the same actions complained of were not accorded similarly situated White employees, changing and denying the Plaintiff's accommodated work schedule as a means to punish the Plaintiff.

71. That the conduct complained of were various and continuous, harassing, created a hostile work environment for the Plaintiff from 2016 until the Plaintiff was placed on sick leave by his doctors.

72. That as a result to the Defendants' action, the Plaintiff was forced to constructively quit his position.

73. That as a result thereof, the Plaintiff incurred damages.

74. As a direct and proximate result of the defendants' discrimination conduct, the Plaintiff has suffered compensatory damages, benefits-vacation pay, mental anguish, humiliation, distress, inconvenience, damages to his personal and professional reputation.

75. That the Plaintiff is entitling to an award of punitive damages.

76. The Plaintiff alleges that the workplace harassment he was subjected to by the defendants was pervasive, severe, and involved a physical threat to his safety and well-being.

77. As a direct and proximate result of the unlawful conduct complained of, the defendants selectively enforced rules, custom, practices, procedures, and requirements for employee conduct against Plaintiff which left him no recourse by to constructively quit his job.

78. That the defendants by their unlawful conduct maintained a severe and pervasively hostile work environment and denied the Plaintiff the right to be free from discrimination, harassment, hostile work environment, and retaliation.

79. That the Defendants failed to promulgate, maintain, and enforce adequate, meaningful and effective policies and procedures for employees to complain of violations of their right, and for investigation, and discipline in the event of such complaints.

80. As a direct and proximate result of said unlawful conduct, the Plaintiff suffered and continues to suffer the loss of pay, benefits and retirement credits, and his career has been impeded and impaired.

81. As a direct and proximate result of said unlawful discrimination, harassment on the job, and retaliation, the Plaintiff 's personal and professional reputations and relations with co-workers and peers have been irreparably harmed, and he suffered and continues to suffer stress and mental/emotional distress.

82. As a direct and proximate result of the unlawful conduct complained of, the Plaintiff has sustained pain and suffering, serious psychological injury, emotional distress, mental anguish, embarrassment and humiliation.

83. As a direct and proximate result of the unlawful conduct complained of, the Plaintiff has incurred medical expenses, other economic damages, and continues to experience emotional pain and suffering, which has now obligated him to expend sums of monies for medical care and attention in an effort to cure himself of the injuries visited upon him by the defendants.

84. As a direct and proximate result of said unlawful discrimination, harassment on the job, the Plaintiff continues to suffer stress and mental/emotional distress.

85. As a direct and proximate result of said unlawful discrimination, harassment on the

job, the Plaintiff is entitled to back pay, front pay, compensatory damages, and punitive

damages.

86.    As a direct and proximate result of said unlawful discrimination, harassment on the

job, Mr. John must incur substantial costs and attorney's fees to seek appropriate redress.


## COUNT TWO:  VIOLATION OF TITLE VII AS AGAINST DEFENDANTS WALMART STORE # 2585 AND WALMART STORES EAST, LP., THROUGH THEIR AGENTS.

87. Mr. John, the Plaintiff repeats, realleges and incorporate by reference the allegations

set forth in paragraph 1 through 86, inclusive, as though fully set forth herein.

88.    Defendants subjected the Plaintiff to invidious discrimination based on his race-

black and color, and his sex-male, because of his membership in the aforementioned protected

class in violation of Title VII if the Civil Rights Act of 1964.

89.    That the Plaintiff, Jay John for all relevant times was an African American male

employed by the Defendants.

90.    That for all times relevant, the Plaintiff was qualified for the position he held, and

his performance was satisfactory.

91.    That as a result to the discriminatory conduct complained of herein, the Plaintiff was

denied promotion, subjected to unequal treatment as compared to his White colleagues, and his

work was demeaned, degraded, and forced to constructively quit, because the work conditions

complained of were continuously intolerable, causing his illness.

92.    That the Defendants by and through their officials, managers, supervisors, and

agents hired, promoted, caused the transfer of similarly situated non-basis employees in order to

displace, and thereby deny the Plaintiff promotion and other employment opportunities.

93.    That for all relevant times, the Plaintiff's immediate supervisor was James Rhine, an

"admitted hater of Black men."

94.  That Rhine also had a history of assaultive conduct.

95.  That the Defendants' agents Plaintiff's intentionally labeled the Plaintiff's work performance as "Development Needed," often lacking customary feedback," forming the basis for denying raises to the Plaintiff. by Defendants' agents James Rhine and others, to thwart his progress and his employment opportunities.

96.  That the defendants conduct was discriminatory and served to deny the Plaintiff advancement at the Defendants workplace.

97. The defendants' acted intentionally or recklessly to violate the Plaintiff's right to equal treatment under Federal law as it pertained to his right to make and enforce his employment contract, perform, modify, and terminate contracts, and to enjoy all benefits, privileges and immunities, terms, and conditions of his employment.

98.  All-natural person agents were acting in their capacities as officials, managers, and agents of Defendant Walmart Stores East, LP and Walmart Store Number 2585.

99.  The defendants by their conduct failed to provide adequately training to their subordinate employee regarding the right to equal employment opportunities and treatment in accordance with law.

100.  That soon after James Rhine arrived at the Stratford store, he engaged in a concerted effort to demean, berate, the Plaintiff and other similarly situated black employees, as compared to their White similarly situated colleagues.

101.  That in some instances, the Plaintiff was specifically instructed "to clean certain sections of Walmart Store number 2585 on his knees," by James Rhine. That when the Plaintiff retorted that the area was clean by an associate, Rhine further stated that, "when I tell you to clean

the area on your knee, that is what you do."

102. That the Plaintiff was subjected to unequal treatment with respect to his employment contact and relationship with the defendants, and for all times relevant, James Rhine was employed by the Defendants and supervised the Plaintiff.

103. That these conduct and other complained of were intentionally intended to and did serve to discriminate against the Plaintiff on the basis of his race, color, and sex.

104. That Defendants' agent James Rhine was known to hate Black men.

105. That for all times relevant, James Rhine treated similarly situated White employees differently, and better.

106. That due to the circumstances complained of herein, the Plaintiff was forced on numerous occasions to complaint to James Rhine's superiors, and that no meaningful remedies were provided the Plaintiff.

107. That as a result thereof, James Rhine and others, took actions against the Plaintiff because he complained.

108. That these retaliatory actions included but were not limited to increasing the Plaintiff's work hours, taking actions against him, where the same actions complained of were not accorded similarly situated White employees, changing and denying the Plaintiff's accommodated work schedule as a means to punish the Plaintiff.

109. That the conduct complained of were various and continuous, harassing, created a hostile work environment for the Plaintiff from 2016 until the Plaintiff was placed on sick leave by his doctors.

110. That as a result to the Defendants' action, the Plaintiff was forced to constructively quit his position.

111. As a direct and proximate result of the defendants' discrimination conduct, the Plaintiff has suffered compensatory damages, benefits-vacation pay, mental anguish, humiliation, distress, inconvenience, damages to him personal and professional reputation.

112. That the Plaintiff is entitling to an award of punitive damages.

113. The Plaintiff further alleges that the workplace harassment he was subjected to by the defendants was pervasive, severe, and involved a physical threat to his safety and well-being.

114. As a direct and proximate result of the unlawful conduct complained of, the defendants selectively enforced rules, custom, practices, procedures, and requirements for employee conduct against Plaintiff which left him no recourse by to constructively quit his job.

115. That the defendants by their unlawful conduct maintained a severe and pervasively hostile work environment and denied the Plaintiff the right to be free from discrimination, harassment, hostile work environment, and retaliation.

116. That the Defendants failed to promulgate, maintain, and enforce adequate, meaningful and effective policies and procedures for employees to complain of violations of their right, and for investigation, and discipline in the event of such complaints.

117. As a direct and proximate result of said unlawful conduct, the Plaintiff suffered and continues to suffer the loss of pay, benefits and retirement credits, and his career has been impeded and impaired.

118. As a direct and proximate result of said unlawful discrimination, harassment on the job, and retaliation, the Plaintiff 's personal and professional reputations and relations with co-workers and peers have been irreparably harmed, and he suffered and continues to suffer stress and mental/emotional distress.

119. As a direct and proximate result of the unlawful conduct complained of, the Plaintiff

has sustained pain and suffering, serious psychological injury, emotional distress, mental anguish, embarrassment and humiliation.

120. As a direct and proximate result of the unlawful conduct complained of, the Plaintiff has incurred medical expenses, other economic damages, and continues to experience emotional pain and suffering, which has now obligated him to expend sums of monies for medical care and attention to cure himself of the injuries he suffered which were caused by the defendants.

121. As a direct and proximate result of said unlawful discrimination, harassment on the job, the Plaintiff continues to suffer stress and mental/emotional distress.

122. As a direct and proximate result of said unlawful discrimination, harassment on the job, the Plaintiff is entitled to back pay, front pay, compensatory damages, and punitive damages.

123. As a direct and proximate result of said unlawful discrimination, harassment on the job, Mr. John must incur substantial costs and attorney's fees to seek appropriate redress.


## COUNT THREE:  RETALIATION IN VIOLATION OF TITLE VII AS AGAINST DEFENDANTS WALMART STORE # 2585 AND WALMART STORES EAST, LP., THROUGH THEIR AGENTS.

124.    Mr. John, the Plaintiff repeats, realleges and incorporate by reference the allegations set forth in paragraph 1 through 123, inclusive, as though fully set forth herein.

125. Defendants subjected the Plaintiff to invidious discrimination based on his race-black and color, and his sex-male, and retaliatory conduct.

126. That this conduct was committed against the Plaintiff as a member in the aforementioned protected class in violation of Title VII if the Civil Rights Act of 1964.

127. That the Plaintiff, Jay John for all relevant times was an African American male employed by the Defendants.

128. That for all times relevant, the Plaintiff was qualified for the position he held, and his performance was satisfactory.

129. That as a result to the retaliatory conduct complained of herein, the Plaintiff was denied promotion, subjected to unequal treatment as compared to his White colleagues, and his work was demeaned, degraded, and forced to constructively quit, because the work conditions complained of were continuously intolerable, causing his illness.

130. That the Defendants by and through their officials, managers, supervisors, and agents hired, promoted, caused the transfer of similarly situated non-basis employees in order to displace, and thereby deny the Plaintiff promotion and other employment opportunities, because of the complaints he filed against James Rhine.

131. That for all relevant times, the Plaintiff's immediate supervisor was James Rhine, an "admitted hater of Black men."

132. That Rhine also had a history of assaultive conduct.

133. That James Rine had made comments to other coworkers about his interest in terminating the Plaintiff, without basis.

134. In the past also made comments such as his plans to refuse the Plaintiff's time off requests.

135. On information and belief, James Rhine has taken retaliatory action against the Plaintiff, by virtue of his lodging policy violation complaints against Rhine.

136. That the Defendants' agents Plaintiff's intentionally labeled the Plaintiff's work performance as "Development Needed," often lacking customary feedback," forming the basis

for denying raises to the Plaintiff. by Defendants' agents James Rhine and others, to thwart his progress and his employment opportunities.

137. That the Plaintiff complained to James Rhine's superior about the various discriminatory conduct he had been subjected to, Rhine and other agents of the defendants, but instead defendants' agents retaliated against the Plaintiff, by heightening their conduct, which served to deny the Plaintiff advancement at the Defendants workplace.

138. That the Plaintiff also filed a complaint against the defendants with the Equal Employment Opportunities Commission (hereinafter, EEOC), and the State of Connecticut Commission on Human Right and Opportunities (hereinafter, CHRO) in 2019, opposing the unlawful employment practices by the defendants.

139. That the defendants subjected the Plaintiff to one or more adverse employment actions including subjecting him to unequal treatment as compared to similarly situated non-basis employees, assigning the Plaintiff to assignments designed to degrade and demean him in the eyes of his colleagues

140. Deny him reasonable accommodation with respect to his start and end times, to interfere with the Plaintiff's childcare responsibilities.

141. That the defendants also "made out ethics tickets (warning) for conduct James Rhine and other engaged in," but were not subject to discipline, or similar admonitions.

142. That the defendants through their officials, managers, supervisors and agents routinely assigned the Plaintiff to perform tasks, and intentionally denied adequate numbers of employees to assist the Plaintiff to complete the tasks.

143. That the plaintiff was subjected to the adverse employment action because of the Plaintiff's participation in one or more protected activities opposing the defendants' unlawful

employment practice.

144. That the Plaintiff was subjected to one or more adverse employment action by the defendants because of his participation in the complaints he filed and the protected activity to the defendants' unlawful employment practices, and that the adverse employment action would not have occurred but for the Plaintiff's participation and opposition to the defendants' unlawful conduct.

145.   That the Defendants failed to promulgate, maintain, and enforce adequate, meaningful and effective policies and procedures for employees to complain of violations of their right, and for investigation, and discipline in the event of such complaints.

146. As a direct and proximate result of said unlawful conduct, the Plaintiff suffered and continues to suffer the loss of pay, benefits and retirement credits, and his career has been impeded and impaired.

147. As a direct and proximate result of said unlawful discrimination, harassment on the job, and retaliation, the Plaintiff 's personal and professional reputations and relations with co-workers and peers have been irreparably harmed, and he suffered and continues to suffer stress and mental/emotional distress.

148. As a direct and proximate result of the unlawful conduct complained of, the Plaintiff has sustained pain and suffering, serious psychological injury, emotional distress, mental anguish, embarrassment and humiliation.

149. As a direct and proximate result of the unlawful conduct complained of, the Plaintiff has incurred medical expenses, other economic damages, and continues to experience emotional pain and suffering, which has now obligated him to expend sums of monies for medical care and attention to cure himself of the injuries he suffered which were caused by the defendants.

150. As a direct and proximate result of said unlawful discrimination, harassment on the job, the Plaintiff continues to suffer stress and mental/emotional distress.

151. As a direct and proximate result of said unlawful discrimination, harassment on the job, the Plaintiff is entitled to back pay, front pay, compensatory damages, and punitive damages.

152. As a direct and proximate result of said unlawful discrimination, harassment on the job, Mr. John must incur substantial costs and attorney's fees to seek appropriate redress.

## COUNT FOUR:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS AGAINST DEFENDANTS WALMART STORE # 2585 AND WALMART STORES EAST, LP., THROUGH THEIR AGENTS.

153. Mr. John, the Plaintiff repeats, realleges and incorporate by reference the allegations set forth in paragraph 1 through 152, inclusive, as though fully set forth herein.

154. That at all relevant times, the Defendants officials, managers, supervisors, and agents acted on behalf of the defendants and their conduct were binding upon the defendants.

155. The defendant intentionally inflicted emotional distress to Mr. John from the discriminatory conduct complained of, as well as the incessant turmoil, public shaming, demeaning, and embarrassment the defendants subjected him to.

156. More specifically, the defendants intentionally subjected the Plaintiff to emotional distress by engaging in unrelenting workplace harassment and a hostile work environment by demeaning and minimizing his work, characterizing his performance as "Development Needed," often lacking customary feedback," forming the basis for denying raises to the Plaintiff. by Defendants' agents James Rhine and others, to thwart his progress and his employment opportunities.

157. The defendants engaged in conduct they knew with substantial certainty involved an unreasonable risk of causing severe emotional distress to the Plaintiff, by placing him in distress, and that the distress would have resulted in emotional illness or bodily injury.

158. The defendants knew with substantial certainty that their conduct would have caused emotional distress.

159. The defendants conduct shocked the conscience and offended Mr. John's personal dignity.

160. As a direct and proximate result of said conducts, Mr. John's personal and professional reputations and relations with co-workers and peers have been irreparably harmed, and he suffered and continues to suffer stress and mental/emotional distress.

161. As a direct and proximate result of the unlawful conduct complained of, Mr. John has sustained pain and suffering, serious psychological injury, emotional distress, mental anguish, embarrassment, and humiliation.

162. As a direct and proximate result of the unlawful conduct complained of, Mr. John has incurred medical expenses and he has incurred economic damages, and continues to experience emotional pain and suffering, which has now obligated him to expend sums of monies for medical care and attention to cure himself of the injuries he suffered which were caused by the defendants.

163. As a direct and proximate result of said unlawful conduct Mr. John is entitled to compensatory damages for the injuries the defendants caused, as well as punitive damages.

164. As a direct and proximate result of said unlawful conduct Mr. John must incur substantial costs and attorney's fees to seek appropriate redress.

**COUNT FIVE, <u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS AGAINST DEFENDANTS WALMART STORE # 2585 AND WALMART STORES EAST, LP., THROUGH THEIR AGENTS.</u>**

165. Mr. John repeats, realleges and incorporate by reference the allegations set forth in paragraph 1 through 164 inclusive, as though fully set forth herein.

166.   That at all relevant times, the Defendants officials, managers, supervisors, and agents acted on behalf of the defendants and their conduct were binding upon the defendants.

167. The defendants owned a duty of care to Mr. John to be free from emotional distress, or they should have realized the unreasonable risk of emotional distress which would have resulted from their conduct towards Mr. John.

168. The defendants breached the duty of care they owed Mr. John to be free from unreasonable risks, which resulted in his injuries by placing him in distress.

169. The defendants were the proximate cause of the emotional distress suffered by the plaintiff.

170. Mr. John suffered damages resulting from the mental and emotional injuries occasioned by the unreasonable risks the defendants exposed him to from 2017 to present.

171. The defendants should have known that it was likely that a reasonable person as Mr. John, under the circumstances would be distressed by their unlawful conduct and that the distress would have resulted Mr. John's subsequent illness and injuries.

172. As a result of the defendants' conduct, Mr. John has been unable to pursue his usual activities due to the psychological, and emotional injuries and damages he has suffered.

173. As a direct and proximate result of said conducts, Mr. John's personal and professional reputations and relations with co-workers and peers have been irreparably harmed,

and he suffered and continues to suffer stress and mental/emotional distress.

174. As a direct and proximate result of the unlawful conduct complained of, Mr. John's has sustained pain and suffering, serious psychological injury, emotional distress, mental anguish, embarrassment, and humiliation.

175. As a direct and proximate result of the unlawful conduct complained of, Mr. John has incurred medical expenses and he has incurred economic damages, and continues to experience emotional pain and suffering, which has now obligated him to expend sums of monies for medical care and attention to cure himself of the injuries he suffered which were caused by the defendants.

176. As a direct and proximate result of said unlawful conduct Mr. John is entitled to compensatory damages for the injuries the defendants caused, as well as punitive damages.

177. As a direct and proximate result of said unlawful conduct Mr. John must incur substantial costs and attorney's fees to seek appropriate redress.

## COUNT SIX, <u>NEGLIGENT HIRE, SUPERVISION AND RETENTION AS AGAINST DEFENDANTS WALMART STORE # 2585 AND WALMART STORES EAST, LP., THROUGH THEIR AGENTS.</u>

178. Mr. John incorporates by reference herein the allegations set forth in the preceding paragraphs 1 through 177, as if fully set forth herein.

179. That for all relevant purposes stated herein officials, managers, supervisors and agents of the defendants acted on behalf of the defendants and their conduct had binding effect thereof.

180. By virtue of their positions, these defendants were vested with the power and authority to recommend, inform, supervise, and terminate James Rhine and he conduct complained of herein.

181. That none of the officials, managers, supervisors, or agents of the defendants took the steps necessary to protect Mr. John from the conduct complained of at any point, when in fact, at times, they were active facilitators of the unlawful conduct complained of by the Plaintiff, Mr. John.

182. That the officials, managers, supervisors, and agents of the defendants engaged in acts, or omissions that served to violate the duty of care owed Mr. John free from discrimination on the basis of his race, color, sex, retaliation, hostile work environment, harassment, intentional and negligent infliction of emotional distress.

183. That all officials, managers, supervisors, and agents of the defendants engaged in acts, or omissions that served to breach the duty of care owed the Plaintiff to be free from the conduct complained of causing his injuries.

184. That officials, managers, supervisors, and agents of the defendants breached the duty of care owed to Mr. John by negligently supervising James Rhine and the others who engaged in the conduct complained of  by retaining him, as here where they knew or should have known that the exercise of reasonable care on their part, would have revealed that James Rhine was incompetent and/or unfit, thereby creating an unreasonable risk of harm to Mr. John, and that he should not have been hired, he should have been terminated, or at the least subjected to heightened supervision.

185. That by virtue of the numerous complaint Mr. John made about James Rhine's unlawful conduct, the officials, managers, supervisors, and agents of the defendants knew or should have known from Mr. John's personal encounter with James Rhine that he would not have ceased his conduct.

186. That the defendants knew or should have known that James Rhine was actively

engaging in repeated acts to deny Mr. John promotional opportunities.

187. That the defendants knew or should have known of James Rhine's unfitness and incompetence over a sustained period, especially here, where the exercise of reasonable care on the officials, managers, supervisors, and agents of defendants who had supervisory responsibilities over James Rhine should have seen that he was incompetent and/or unfit, by their failure to act, or their omissions created an unreasonable risk of harm to Mr. John, because:

Defendants Rhine should not have been transferred to Walmart Store Number 2585, based on his prior assaultive acts, his hatred for African American men, and the unlawful conduct he engaged in prior to Mr. John's constructive quit.

188. That based on the defendants' negligent hire, supervision and retention of James Rhine, Mr. John has not been unable to pursue his usual activities and employment due to the psychological, and emotional injuries and damages he has suffered.

189. As a direct and proximate result of said conducts, Mr. John's personal and professional reputations and relations with co-workers and peers have been irreparably harmed, and he suffered and continues to suffer stress and mental/emotional distress.

190. As a direct and proximate result of the unlawful conduct by the defendants, Mr. John has sustained pain and suffering, serious psychological injury, emotional distress, mental anguish, embarrassment, and humiliation.

191. As a direct and proximate result of the unlawful conduct by the defendants, Mr. John has incurred medical expenses and he has incurred economic damages, and continues to experience emotional pain and suffering, which has now obligated him to expend sums of monies for medical care and attention to cure himself of the injuries he suffered which were caused by the defendants.

192. As a direct and proximate result of said unlawful conduct Plaintiff is entitled to compensatory damages for the injuries James Rhine caused, as well as punitive damages.

193.  As a direct and proximate result of said unlawful conduct Mr. John must incur substantial costs and attorney's fees to seek appropriate redress.


## IV.    **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff respectfully requests:

a. Compensatory damages, front pay and back pay.

b. Damages for pain and suffering, emotional distress, injury to reputation, loss of self-esteem, enjoyment of life, and consequential damages;

c. Punitive damages;

d. Costs;

e. Attorneys' fees;

f. Interest and such other and further relief as the Court deems just and equitable. Plaintiff demands a trial by jury on all issues so triable.

**FOR THE PLAINTIFF,**
**JAY JOHN**


BY_____/S/_____        Dated:   September 23, 2021
Richard C. Gordon, Esq.,
Fed Bar No.: ct27288
40 Court Street
Windsor, CT 06095
Tele: (860) 534-0547
Email:  rcgordonlaw@gmail.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JAYAKAR JOHN** | ) | **CASE NO.: 3:21-cv-1285** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **WALMART STORE No.: 2585 and** | | |
| **WALMART STORES EAST, LP., et al.,** | ) | **September 23, 2021** |
| **Defendants.** | ) | |

## JURY TRIAL DEMANDED


The Plaintiff, Jayakar John demands a trial by jury as to all issues so triable.


**FOR THE PLAINTIFF,**
**JAY JOHN**


BY_____/S/_____         Dated:  September 23, 2021
Richard C. Gordon, Esq.,
Fed Bar No.: ct27288
40 Court Street
Windsor, CT 06095
Tele: (860) 534-0547
Email: rcgordonlaw@gmail.com

## CERTIFICATION

The undersigned counsel certifies that a copy of the foregoing Complaint will be served upon the Defendants by a State Marshal, or an organization certified to make service of process upon parties, in a manner, time, and in accordance with law.

**FOR THE PLAINTIFF,
JAY JOHN**

BY _____ /S/ _____          Dated:   September 23, 2021
Richard C. Gordon, Esq.,
Fed Bar No.: ct27288
40 Court Street
Windsor, CT 06095
Tele: (860) 534-0547
Email:  rcgordonlaw@gmail.com