# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

JAYAKAR JOHN,

     Plaintiff,

     v.

WALMART STORE No. 2585 and WALMART
STORES EAST, LP.

     Defendants.

No. 3:21-cv-1285 (MPS)

## RULING ON MOTION TO DISMISS

The plaintiff, Jayakar John, complains that the defendants, Walmart Store No. 2585 and Wal-

Mart Stores East, LP, et. al. (collectively, Walmart), discriminated against him in the terms and

conditions of his employment because of his race.  John seeks damages and equitable relief as a

result of the alleged discrimination.   Walmart has moved to dismiss the six counts in John's

Second Amended Complaint under Fed. R. Civ. P. 12(b)(6), asserting that he failed to state a

claim upon which relief may be granted.  After careful review of the pleadings and law, I grant

Walmart's motion to dismiss all claims except for the hostile work environment claim under

Title VII and 42 U.S.C. § 1981, and the negligent hiring, supervision, and retention claim.

## I.    Factual Allegations[1]

John is an African American man who was hired by Walmart on March 2, 2001, as an

Assistant Operations Manager.  At the relevant times, he worked at the store located in Stratford,

---

[1] I accept the following facts, taken from the Second Amended Complaint (ECF No. No. 24), as true for
purposes of this motion.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Connecticut (Walmart store no. 2585).  ECF No. 24 ¶¶ 9-10, 13. His employment with Walmart ended when he quit in 2019.  *Id.*  ¶¶ 73-74.

Prior to leaving Walmart, John was supervised by James Rhine.  Rhine became John's supervisor in 2016.  ECF No. 24 ¶ 13.  Previously, John was supervised by Robin Maleky.  *Id.* ¶ 22.  John alleges that from 2016 to 2019 Rhine evaluated his work performance as "Development Needed" even though he performed his job in a "better than satisfactory manner." *Id.* ¶ 19.  He further alleges that this evaluation "formed the basis for denying him raises . . . and promotional opportunities."  *Id.*  Rhine "has subjected two other African American assistant managers to the same conduct . . . under circumstances when white assistant managers were not subject to the same or similar situations, [and] received raises and promotional opportunities." *Id.* ¶ 20.

John states that he received a "Satisfactory" rating from Maleky while Rhine was on vacation, but that Rhine changed the "Satisfactory" to "Development Needed" when he returned from vacation.  ECF No. 24 ¶ 23.  It is company policy to initiate a performance action plan after a "Development Needed" evaluation.  *Id.* ¶ 24.  John was not given a "Performance Action Plan" for his "Development Needs" evaluation, but "[o]n information and belief," his "non-basis comparators" were given action plans.  *Id.* ¶ 25.

John made numerous complaints about Rhine to the Walmart "Marketing Team." ECF No. 24 ¶ 26.  John alleges that his complaints "yielded no results" and contrasts this with another situation in which a Caucasian, female, assistant manager complained about Rhine and was transferred to another store.  *Id*. ¶¶ 27-28.

On January 14, 2019, Rhine publicly berated John during a managers meeting for delegating a cleaning task to another employee "rather than doing it himself and on his knees." ECF No. 24 ¶ 30.  Shortly after the meeting, Rhine changed John's schedule by an hour, from 8:00 to 6:00 to 9:00 to 7:00.  This change eliminated an accommodation that John had previously received in order to meet his childcare responsibilities.  *Id.* ¶¶ 32-34.  John alleges that "non-basis" employees received schedule accommodations.  *Id.* ¶ 36.

In February 2019, Rhine issued John an ethics ticket after he distributed beverages left by a vendor to employees.  John asserts that Rhine and "other non-basis supervisors" had previously engaged in the same behavior without receiving an ethics ticket.  ECF No. 24 ¶ 38-41.  **John complained to Rhine that he believed he was intentionally discriminated against and that "the ethics ticket was intended to sabotage the Plaintiff's chances for advancement in the company."** *Id.* ¶ 42.

John alleges that at some unspecified time, "Rhine has expressed his dislike for and has demonstrated his animus for African American males generally, and the Plaintiff specifically," including statements that "he did not like working with [African Americans]" and that "his niece who dated an[ ] African American male was forever spoiled."  ECF No. 24 ¶ 17.  These allegations are made on "information and belief," *id.* and the complaint does not otherwise suggest that Rhine made any of these statements in John's presence.

In addition, Rhine has "made comments to other coworkers about his interest in terminating John, without basis" and "has refused John's time-off requests, as opposed to non-basis employees."  ECF No. 24 ¶¶ 46, 47.  On "information and belief, Rhine has taken retaliatory action against [John], [because] of [John's] lodging policy violation complaints against Rhine." *Id.* ¶ 49.  John also alleges that Rhine was "investigated for referring to an employee as the N-

word," and that he "charg[ed] an African American Guardsman his monthly guard-duty assignment as personal time . . . contrary to policy while granting non-basis employee[s] their requests without sanction." *Id.* ¶¶ 70, 71.  He does not allege when these events occurred, how he heard about them, or any other details about them.

John asserts that he suffered emotional injury and required medical treatment as a result of the demeaning conduct he was subjected to by Rhine and Walmart.  ECF No. 24 ¶¶ 43, 44.

## II.     Procedural Background

John's initial complaint was filed on September 27, 2021 (ECF No. 1) and amended on December 2, 2021.  ECF No. 8.  Walmart filed its first motion to dismiss on February 9, 2022. ECF No. 16.  I ordered the plaintiff either to file a response to the motion or to file an amended complaint addressing the alleged defects discussed in Walmart's motion to dismiss.  ECF No. 17. In response, John filed a second amended complaint on March 9, 2022.  ECF No. 24.  I denied Walmart's first motion to dismiss because it no longer addressed the operative complaint.  ECF No. 25.  On March 30, 2022, Walmart filed a second motion to dismiss.  ECF No. 28.  On April 25, 2022, John filed a response.  ECF No. 31.  On May 9, 2022, Walmart filed a reply brief. ECF No. 33.

## III.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41, 41 (2d Cir. 2017) (quoting

*Ashcroft*, 556 U.S. at 678).

In deciding a motion to dismiss, the Court must accept the well-pleaded factual allegations of

the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Warren v.*

*Colvin*, 744 F.3d 841, 843 (2d Cir. 2014). The Court must then determine whether those

allegations "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150,

161 (2d Cir. 2010). The Court is not required to accept as true "conclusory allegations or legal

conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d.

Cir. 2008) (internal quotation marks omitted).

## IV.    Discussion

The operative complaint raises six claims: 1) Violation of 42 U.S.C. §1981; 2) Violation of

Title VII; 3) Retaliation in violation of Title VII; 4) Intentional infliction of emotional distress;

5) Negligent Infliction of Emotional Distress; and 6) Negligent Hiring, Supervision and

Retention. I address Walmart's arguments as to these claims below.

### A.    Counts One and Two: Violation of 42 U.S.C. § 1981 and Title VII

Because the operative complaint arguably pleads claims for both disparate treatment and

hostile work environment, I analyze these claims separately below.

#### 1. *Disparate Treatment*

Defendants argue that counts one and two fail for want of allegations describing an

adverse employment action or averments that plaintiff's race was the "but-for" cause of any

alleged mistreatment.  ECF No. 28.  To state a claim under section 1981or Title VII[2], a plaintiff

must plead facts showing that the plaintiff is a member of a protected class, was qualified,

suffered an adverse employment action, and has at least minimal support for an inference that the

employer was motivated by discriminatory intent.  *Littlejohn v. City of New York*, 795 F.3d. 297,

311 (2d Cir. 2015).  "An adverse employment action is one which is more disruptive than a mere

inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d

Cir. 2003) (internal quotation marks omitted).  "Examples of materially adverse changes include

termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities,

or other indices unique to a particular situation." *Vega v. Hempstead Union Free School District*,

801 F.3d 72, 85 (2d. Cir. 2015) (internal quotation marks omitted).

John fails to allege a materially adverse change in his employment.  John does not allege

a termination or a demotion, reduction in pay or position, or a loss of material benefits or

responsibilities.

John alleges that Rhine "made comments to other coworkers about his interest in

terminating the Plaintiff, without basis." *Id.* ¶ 69.  John does not indicate when these comments

were made, to whom, or how he heard about them.  Even if I treat these comments as threats of

termination, they are insufficient.  "[T]hreats of termination cannot, by themselves, constitute an

adverse employment action." *Murray v. Town of North Hempstead*, 853 F.Supp.2d 247, 269

(E.D. N.Y. 2012).  "Although threats of termination alone have occasionally been held to be

sufficient to permit a rational trier of fact to find that a reasonable person in the employee's

---

[2] "Section 1981 discrimination claims are analyzed under the same substantive standard applicable to Title VII discrimination claims." *Belton v. Borg Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 447 (W.D.N.Y. 2021).

shoes would have felt compelled to resign, those cases involved direct and/or repeated threats

from the employer, along with some other adverse conduct." *Id.* at 270.

Here, the threats of termination (if there was more than one) were made to other

coworkers, not directly to John, and at unspecified times.  ECF No. 24 ¶ 69.  They were not

coupled with other adverse conduct and John was not terminated.  He also pleads no facts

suggesting that he quit in 2019 as a result of or at a time in close proximity to Rhine's comments

to others about termination.[3]  Rhine's comments to another person about the possibility of

terminating John, outside of John's presence and unaccompanied by other action, are insufficient

to amount to an adverse employment action.

John also alleges that he has been denied opportunities for promotion and raises.  ECF

No. 24 ¶ 19.  Although "[i]t is well-established that a failure to promote is an adverse

employment action," *Levitant v. City of New York Human Resources Admin.* 558 Fed.Appx. 26,

29 (2d. Cir. 2014), the operative complaint fails to give any specifics from which I could infer

that John expressed an interest in promotion or sought a raise.  "In order to state a failure to

promote claim, a plaintiff must show that he applied for a position and was rejected." *Sethi v.

Narod* 12 F.Supp.3d 505, 525 (E.D. N.Y. 2014).  "A specific application is required to ensure

that, at the very least, the plaintiff employee alleges a particular adverse employment action, an

instance of alleged discrimination, by the employer." *Petrosino v. Bell Atlantic*, 385 F.3d 210,

227 (2d Cir. 2004).  "The law recognizes that the facts of a particular case may sometimes make

a specific application a quixotic requirement." *Id.*  "But the exception is narrow" and requires the

employee to demonstrate that "(1) the vacancy at issue was not posted, and (2) the employee had

---

[3] I discuss John's constructive discharge claim below, in the section of this ruling addressing his hostile work
environment claim.

(a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through

informal procedures endorsed by the employer." *Id.*  The complaint does not identify another

position that John desired, present any indication that he requested or applied for another

position, or indicate if anyone was hired in his stead.  It also does not allege that there was a

vacancy or indicate whether any such vacancy was posted.  The vague allegations in the

operative complaint do not elevate John's general statement that he was denied promotion to the

level of an adverse employment action.

John's allegations concerning a raise are similarly vague.  While a denial of a raise is an

adverse employment action, *Lin v. UT Freight Service (USA) Ltd.,* 2022 WL 767863 *5 (E.D.

N.Y. Mar. 14, 2022), "if the plaintiff can cite no facts suggesting that discretionary pay was

awarded as a matter of course or that he was otherwise entitled to expect or rely on it, the

employer's decision not to award the pay does not change the terms or conditions of [the

plaintiff's] employment, so as to establish an adverse employment action." *Wilkinson v. New

York State,* 2019 WL 5423573 *9 (E.D.N.Y. Oct. 22, 2019).  John does not provide any details

regarding his pay or any opportunities for, or expectations of, pay raises.  He does not indicate

when any raises were requested or denied.  He alleges no facts about Walmart's practices

regarding raises, such as whether "discretionary pay was awarded as a matter of course."  He

does allege – somewhat confusingly- that "James Rhine has subjected two other African

American Assistant Managers to the same conduct [i.e., apparently rating them as "Development

Needed"], and similarly denied them raises, under circumstances where White Assistant

managers were *not* subject to the same or similar situations, received raises, and promotional

opportunities."  ECF No. 24 ¶ 20 (emphasis added).  But this allegation, too, is vague, at least

insofar as it refers to raises and "promotional opportunities," lacking any details as to timing,

place, or circumstances, and failing to allege any facts about Walmart's practices regarding raises or sufficient facts to suggest that similarly situated persons were treated differently. John's allegations about raises do not amount to an adverse employment action.

John's allegations about a schedule change are more specific but they do not describe a material change in his employment conditions.  "Where the change in schedule does not occasion a reduction in wages or job responsibilities, unfavorable schedules are a mere inconvenience and not an adverse employment action." *Albuja v. National Broadcasting co. Universal, Inc*. 851 F.Supp.2d 599, 608 (S.D.N.Y. 2012).  John alleges that Rhine changed John's work schedule by one hour, from 8:00 to 6:00 to 9:00 to 7:00.  He states that the 8:00 to 6:00 schedule was an accommodation that allowed him to fulfill his childcare responsibilities. *Id*. ¶¶ 32-34.  John's hours were not reduced or increased; they were shifted one hour later.[4]  The change may have been inconvenient, but John does not plead that the change impacted his benefits or his work.  *See Arroyo-Horne v. City of New York*, 2018 WL 4259866 *12 (E.D.N.Y. Sept. 5, 2018) (finding no adverse employment action when plaintiff alleged that schedule change forced her to arrange to have her mother cared for and to venture into "high-crime" neighborhoods in the dark because plaintiff had not alleged that schedule change impacted her conditions of employment).  The one-hour change to John's schedule is not an adverse employment action because it did not significantly change his benefits or his work conditions.

John also alleges that Rhine changed his performance evaluation from satisfactory to "Development Needed" and that, contrary to company policy, Walmart did not place John on a

---

[4] In paragraph 108, John lists "increasing the Plaintiff's work hours" as a "retaliatory action" taken against him.  He does not say when, for how long, or by how much, his work hours were increased, nor does he mention this at any other time in the operative complaint.  I do not consider this increase in hours to be related to the schedule change, and the brief reference to an increase in work hours is too vague by itself to suggest an adverse employment action.

"Performance Action Plan," as it apparently did for his "non-basis comparators" in similar circumstances.  ECF No. 24 ¶¶ 23-24.   These actions do not amount to an adverse employment action either, because John does not allege that any consequences flowed from them – such as a suspension, demotion, decrease in pay, or any other material change in the terms and conditions of his employment.  *See Belton v. Borg Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 442 (W.D.N.Y. 2021) ("Generally, without more, an employer's criticisms or negative evaluations of an employee's performance do not constitute actionable adverse employment action, nor do everyday workplace grievances, disappointments, and setbacks" (internal quotation marks and citations omitted)).

John also alleges that he was issued an "ethics ticket," which he describes as a "warning," ECF No. 24 ¶ 40, for distributing beverages left by a vendor to other employees.  Warnings alone are not adverse employment actions.  *Chang v. Safe Horizons,* 254 Fed. Appx. 838, 839 (2d Cir. Nov. 5, 2007) ("oral and written warnings do not amount to materially adverse conduct" for purposes of a retaliation claim); *Abraham v. Potter,* 494 F.Supp.2d 141, 147 (D. Conn. 2007) ("district courts within the Second Circuit have often found . . . that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." (internal quotation marks omitted; citing cases)).  And John does not allege that any consequences flowed from his receipt of the ethics ticket – no decrease in pay, demotion, suspension, or other similarly adverse consequences.  The issuance of the ethics ticket is not an adverse employment action.

Because John has not pled facts sufficient to suggest an adverse employment action, his disparate treatment claims under Section 1981 and Title VII fail as a matter of law.

2. *Hostile Work Environment*

John also alleges a hostile work environment claim.  ECF No. 24 ¶ 109.  "An adverse

employment action is not always required to sustain a hostile work environment claim." *Benedith*

*v. Malverne Union Free Sch. Dist.*, 38 F. Supp.3d 286, 313 (E.D.N.Y. 2014), *disagreed with on*

*other grounds*, *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86 (2d Cir. 2020).  While disparate

treatment claims "may scrutinize discrete harms such as hiring or discharge, a hostile work

environment claim analy[z]es a workplace environment as a whole to discover whether it is

abusive." *Raniola v. Bratton*, 243 F.3d 610, 617 (2d. Cir. 2001).  Section 1981 and Title VII

hostile work environment claims are analyzed under the same standard.  *See Littlejohn v. City of*

*New York*, 795 F.3d at 320-21 (analyzing Section 1983 and Title VII hostile work environment

claims together using the same standard).  Under both statutes, a plaintiff must allege facts

showing that (1) the harassment was sufficiently severe or pervasive to alter the conditions of the

plaintiff's employment and create an abusive working environment, and (2) a specific basis

exists for imputing the hostile work environment to employer.  *Lamar-Arruz v. CVS Pharmacy,*

*Inc.* 271 F.Supp.3d 646, 655-56 (S.D.N.Y. 2017).  The workplace must be "permeated with

discriminatory intimidation, ridicule, and insult, . . . sufficiently severe or pervasive to alter the

conditions of . . . employment and create an abusive working environment." *Harris v. Forklift*

*Sys, Inc*., 510 U.S. 17, 21, 23 (1993) (internal quotation marks and citation omitted).  Courts

must examine "all the circumstances" in determining whether an environment is "hostile" or

"abusive," including the following factors: (1) the frequency of the discriminatory conduct; (2)

its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance;

and (4) whether it unreasonably interferes with an employee's work performance.  *Id.* at 23.  To

show that discriminatory conduct is sufficiently severe or pervasive, John must allege facts

showing "either that a single incident was extraordinarily severe, or that a series of incidents

were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

John points to twelve incidents from 2016 to 2019 – four comments by Rhine, Rhine's comments to others about terminating John, his comments about denying John his time off, the schedule change, the "Development Needed" evaluation, the ethics ticket, and three allegations about disparate treatment of other African American employees – to support his hostile work environment claim.

I begin with three of the four comments, the three that were facially raced-based. John alleges that Rhine "was investigated for referring to an employee as the [N-word]," stated that his niece was "spoiled" because she dated an African-American male, and stated that he did not like working with African-Americans. ECF No. ¶ 102. John does not allege that any of these three comments were made in his presence. As to the use of the N-word, the complaint does not actually allege that Rhine ever used the word, only that he was "investigated" on the subject, although I will assume that he did use the word in the presence of a Walmart employee for purposes of this ruling because I must view the allegations in the light most favorable to John and draw all reasonable inferences in his favor. *Cohen v. S.A.C. Trading Corp*., 711 F.3d 353, 358 (2d Cir. 2013). It is also not clear from the complaint whether Rhine made these remarks during the three years he and John worked together at the Stratford store. Again, however, I will assume for purposes of this ruling that Rhine made all three comments during that period.

The fourth comment attributed to Rhine – on January 14, 2019, he told John, "When I tell you to clean the area on your knees, that is what you do," ECF No. 24 ¶ 30 – is specific but is facially race-neutral. In order for facially race-neutral incidents to be included in the totality-of-the circumstances analysis of a hostile work environment claim, there must be some basis for a

court to infer that the statement was based on race.  *See Alfano v. Costello*, 294 F.3d 365, 378
(2d. Cir. 2002).  In light of the three race-based comments by Mr. Rhine, I will treat this
comment by him as bearing some connection to John's race, given the procedural posture.

In addition to the four comments, John also alleges that Rhine made comments to others
about terminating him and refusing him time off (and that he "acted to refuse the Plaintiff's time
off requests" ECF No. 24 ¶ 48).  He also alleges the "Development Needed" evaluation, the
schedule change, the ethics ticket, the denials of raises to two African American Assistant
Managers, and the treatment of the African American guardsman's PTO requests.[5]

The severity of these incidents varies.  Two of these incidents – the berating at a
managers meeting about cleaning the floor on his knees and the alleged use of the "N-word" –
are undoubtedly severe.  The first was a public humiliation and the second involved a very
serious racial epithet.  While neither incident was physically threatening, these two, when viewed
in the light most favorable to John, are at the more severe end of the spectrum.  Of the remaining
incidents, the two other racially biased remarks attributed to Rhine both approach a moderate
level of severity, because the complaint does not suggest that either remark was made in the
plaintiff's presence.  The remaining incidents are minor and facially race-neutral, with the
exception of the three allegations of disparate treatment of African American co-workers, which
are, as discussed above, short on detail.  The "Development Needed" evaluation is very minor
and the disparate treatment assertion related to it is conclusory.  ECF No. 24 ¶ 25 ("On
information and belief, the Plaintiff was not placed on [a Performance Action Plan], as compared
to his non-basis comparators.").   The ethics ticket claim does allege disparate treatment of John

---

[5] I do not count John's vague references to his own denial of raises and promotional opportunities or his conclusory
allegation that Mr. Rhine "committed various acts of assaulting coworkers in the past." ECF No. 24 ¶ 80.  These
allegations are simply too conclusory to take into account.

by Rhine – in particular, that John received a warning for the same conduct Rhine had engaged in – but this too, is thinly pled, with no specification of timing or circumstances and no indication that John suffered any consequence from this "warning." ECF No. 24 ¶ 40.

Taken together, John's hostile work environment allegations present a close call, but given the procedural posture, I find them sufficient – albeit barely sufficient – to plead a hostile work environment claim.  There is "no fixed number of incidents that a plaintiff must endure to establish a hostile work environment." *Alfano*, 294 F.3d at 379.  The "[i]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* at 374.  Twelve incidents over the course of three years is not especially "pervasive," and several decisions have found a similar quantity of incidents to be insufficient. *See e.g., Berrie v. Board of Education of Port Chester-Rye Union*, 750 Fed.App'x. 41 (2d Cir. 2018)(affirming summary judgement and finding that eleven incidents over a five-year period were not hostile or abusive); *Davis-Bell v. Columbia University*, 851 F.Supp.2d 650, 673 (2012)(nine incidents over nearly four-year period were "episodic and isolated, . . .not continuous enough to be considered pervasive by a rational juror."); *Husser v. New York City Dept. of Educ.* 137 F.Supp.3d 253, 259, 276 (E.D.N.Y. 2015) (granting summary judgment as to the hostile work environment claim and finding, "the twelve cited remarks and events over the course of a three-year period are not sufficiently pervasive.").  Nonetheless, I must also consider the severity of the incidents, *Alfano*, 294 F.3d at 374, and, here, the berating of John at a managers meeting amounted to a degrading, public humiliation ("on your knees"), at least when the alleged event is construed in the light most favorable to John.  Further, although, standing alone, this event was facially race-neutral, the allegations about Rhine's race-based comments on other occasions as well as his alleged disparate treatment of John regarding the ethics ticket and

14

three other African American employees (admittedly, thinly alleged) warrant an inference that this humiliation of John at the managers meeting was at least in part motivated by race.  When this is added to the remaining allegations – the most serious of which was Rhine's use of the N-word – I find the entire picture to be just enough to allow this claim to proceed to discovery.  I also note that the above-cited cases involving findings that a similar number of incidents was insufficient were summary judgment decisions made on a full evidentiary record.  Here, by contrast, I have only allegations to go by, and I must construe those allegations in the light most favorable to John. After doing so, I decline to dismiss his hostile work environment claim.

### *Constructive Discharge*

John alleges that he "was forced to constructively quit his position due to the intolerable working conditions." ECF No. 24 ¶ 74.  His constructive discharge claim rests on the same factual allegations as his hostile work environment claim, but the "standard [for establishing constructive discharge] is higher than the standard for establishing a hostile work environment," *Fincher v. Depository Trust and Clearing Corp.* 604 F.3d 712, 725 (2d Cir. 2010).  "Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Id.*  I find that John's factual allegations about Rhine's comments and other behavior, even when construed in John's favor, do not rise to the level necessary to support a claim for constructive discharge.  As discussed, they barely amount to a claim of hostile work environment. Further, John alleges precious few facts about the timing of his quitting.  He does not allege, for example, that he chose to quit immediately following Rhine's berating of him at the mangers' meeting – the most serious of the incidents – nor does he trace his quitting to any of the other incidents.  He fails to specify what made him reach the point that he felt compelled to

resign, and alleges no facts showing why a reasonable person would have felt compelled to resign under the circumstances.  His allegations are inadequate to plead a constructive discharge claim.

### B.      Count Three: Retaliation in Violation of Title VII

John alleges that "he was forced to make numerous complaints against" Rhine "to Defendants' 'Marketing Team,'" that he "left messages" for the "Market Manager" about the schedule change,  that he complained to Rhine that the issuance of the ethics ticket was discriminatory, that Rhine "[took] retaliatory action against" him due to his "lodging policy violation complaints against Rhine," that Rhine's retaliatory actions included "increasing [his] work hours" and "changing and denying" his accommodated work schedule, and that Walmart "den[ied] [him] promotion and other employment opportunities, because of the complaints he filed against … Rhine."  ECF. No. 24 at ¶¶ 26, 37, 42, 49, 72, 131.  John also alleges that he filed complaints with the EEOC and the CHRO in 2019.  *Id.* ¶ 139.  Walmart argues that the retaliation claim fails because John fails to allege facts showing that it is plausible that he was subjected to an adverse employment action or that any such action was causally linked to protected activity.  I agree with both arguments.

Title VII prohibits any employer from discriminating against an employee because he or she "has opposed any practice" prohibited by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To state a claim of retaliation under Title VII, a plaintiff must allege that: "(1) he filed a good faith complaint of discrimination; (2) that the employer had knowledge of; (3) the employer took adverse employment action against Plaintiff; and (4) there was a causal

connection between Plaintiff's protected activity and Defendant's action." *Carpenter v. City of Mount Vernon*, 198 F.Supp.3d 272, 283-284 (S.D.N.Y. 2016).[6]

I assume for purposes of this ruling that John's complaint satisfies the first two components of a retaliation claim, but it does not satisfy the third component – adverse employment action.   The standard for an adverse employment action is less demanding in retaliation cases and focuses on whether the action taken by the employer is "materially adverse," meaning "harmful to the point that [the action] could well dissuade a reasonable worker from making or supporting a charge of discrimination."   *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).

John's allegations do not satisfy even this more relaxed standard.   The only specific factual allegation of a retaliatory action – one alleging a modicum of factual detail, such as dates and other circumstances – is John's allegation that Rhine changed his schedule by an hour, thereby denying him the schedule earlier provided to him to accommodate his childcare needs. A schedule change of an hour is not a materially adverse action, at least not without more detailed factual allegations than John offers. *See Hicks*, 593 F.3d at 165 ("[B]y requiring a showing of material adversity, [the Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 584 U.S. 53 (2006)] preserves the principle [in retaliation cases] that Title VII does not set forth a general civility code for the American workplace…. For example, a schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to young mother with school-age children." (internal quotation marks omitted)).   John does not plead any circumstances that made the one-hour change especially

---

[6] John invokes only Title VII, not Section 1981, in his retaliation claim.  ECF No. No. 24 at 18.

onerous to him, and his remaining allegations of retaliatory actions are conclusory.  For example,

the complaint makes a cursory reference to Rhine's "increasing" John's work hours, but it does

not say when or how often this occurred, how many hours were added, or what the circumstances

were; indeed, it is mentioned nowhere else in the complaint.  Similarly, for reasons discussed

above, John's references to being denied "promotion and other employment opportunities" are

too conclusory to warrant evaluation as possible adverse employment actions; again, they are

bereft of detail as to timing, circumstances, and the like.  And while he does not allege that the

other specific employment-related actions attributed to Rhine or Walmart – the "development

needed" evaluation, the ethics ticket, and the talk of termination and denying time off – were

retaliatory, even if he did, I would not find that any of them – considered singly or together –

were "harmful to the point that [the action]could well dissuade a reasonable worker from making

or supporting a charge of discrimination." *Hicks*, 593 F.3d at 165.  It is not plausible that any of

these actions would dissuade a reasonable employee from opposing discriminatory practices or

making a charge of discrimination.  Further, while the applicable standard is objective and

focuses on a "reasonable employee," *id.*, it is at least worth noting that these actions did not

dissuade John from raising discrimination claims, including one he presented to Rhine himself

when Rhine issued him the ethics ticket.  ECF No. 24 ¶ 42.  Further, the complaint alleges that

other employees, too, complained about Rhine's workplace actions as well as about some of the

specific actions affecting John, like schedule changes.  *Id.* ¶¶ 18, 27-28, 36.  I conclude that

John's factual allegations do not rise to the level of even the lower standard for adverse

employment actions applicable to retaliation claims.    Because John has failed to plead an

adverse employment action, his retaliation claim under Title VII is dismissed.

Even if I found that one of the retaliatory actions identified by John, or any other actions alleged in the complaint, amounted to an adverse employment action, the retaliation claim would still fail for want of any allegations plausibly linking John's protected activity to those actions. Even if every reference in the complaint to John's making a complaint – at work and at the EEOC and CHRO – is considered protected activity, John's failure to allege the dates or other indicia of timing as to virtually all of the actions described in the complaint dooms his retaliation claim. Timing matters in a retaliation claim, *see, e.g.*, *Cayemittes v. City of New York Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013), *aff'd*, 641 Fed. Appx. 60 (2d Cir. 2016) (summary order) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity"), and without pleading any facts suggesting that one of the allegedly retaliatory actions followed some protected activity by John in reasonable temporal proximity, John would need to allege some other facts suggesting causation, such as a statement of retaliatory intent. He fails to do that except in conclusory terms. *See, e.g.,* ECF No. 24 ¶. 131 ("[T]he Defendants …. hired, promoted, … similarly situated non-basis employees to displace, and thereby deny Plaintiff promotion and other employment opportunities, because of the complaints he filed against James Rhine."); ¶ 136 ("On information and belief, James Rhine has taken retaliatory action against the Plaintiff, by virtue of his lodging policy violation complaints against Rhine."). So the retaliation claim also fails because it pleads no facts plausibly showing a link between any protected activity and any adverse actions.

**C.      Count Four:  Intentional Infliction of Emotional Distress**

Walmart argues that plaintiff's intentional infliction of emotional distress claim is anchored in generalized claims of harassment, criticism, and the Development Needed evaluation and is thus legally insufficient because no outrageous conduct is alleged.  I agree that the factual allegations do not suggest extreme and outrageous conduct and dismiss this claim.

To allege a claim for intentional infliction of emotional distress, the plaintiff must plead four elements: (1) that the actor intended to inflict the emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210, 757 A.2d 1059 (2000).  "In order to state a cognizable cause of action, the plaintiff must not only allege each of the four elements, but also must allege facts sufficient to support them."  *Golnik v. Amato*, 299 F.Supp.2d 8, 15 (D.Conn. 2003) (citation omitted).

"Whether a defendant's conduct satisfies the requirement that it be extreme and outrageous is initially a question for the court to decide."  *Appleton v. Bd. of Educ*., 254 Conn. 205, 210.  "The conduct must be so outrageous in character and extreme in degree that an average member of the community would exclaim, 'Outrageous!'" *Id.*  "Only where reasonable minds disagree does it become an issue for the jury. . ."  *Bombalicki v. Pastore*, 71 Conn.App. 835, 839–840, 804 A.2d 856 (2002).  "[C]onnecticut courts have held that insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress." *Miner v. Town of Cheshire*, 126 F.Supp.2d 184, 195 (D. Conn. 2000).

John alleges that Walmart "subjected [him] to emotional distress by engaging in unrelenting workplace harassment and a continuously hostile work environment by demeaning and minimizing his work, characterizing his performance as 'Development Needed,'" "denying him raises," and "thwart[ing] his progress and employment opportunities."  ECF No. 24 ¶ 157. This assertion adds no new facts to the mix, however, and the facts discussed above do not rise to a level that is so outrageous and extreme that an average member of the community would exclaim, "Outrageous!" The most serious conduct alleged – Rhine's humiliation of John at the managers meeting and his use of the "N-word" in the presence of another employee – was not physically threatening or intimidating, and the complaint does not suggest that the N-word was uttered in John's presence.  Although this conduct is serious enough (albeit barely) to contribute to a hostile work environment claim, it does not rise to the level of outrageous conduct, at least without more factual detail.  Nor do any of the other actions described in the complaint, even in combination.  *See Semper v. New York Methodist Hosp.* 786 F.Supp.2d 566, 587 (E.D.N.Y. 2011) (Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of intentional infliction of emotional distress because the conduct alleged is not sufficiently outrageous." (internal quotation marks omitted));*Green v. Harris Publications, Inc*. 331 F.Supp.2d 180, 195-96 (S.D.N.Y. 2004) (where plaintiff overheard supervisor and co-workers use N-word, conduct did not rise to extreme and outrageous level ); *Daniels v. Alvarado*, 2004 WL 502561 *6 (E.D.N.Y. 2004) ("Racial slurs on their own do not constitute conduct so extreme and outrageous in nature as to sustain a claim for intentional infliction of emotional distress." (internal quotation marks omitted)).

### D.  Count Five: Negligent Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress under Connecticut law, a plaintiff must allege that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." *Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 88 (1997) (citation omitted).  In the employment context, however, such a claim "arises only where it is based upon unreasonable conduct of the defendant in the termination process." *Id.* (internal quotation marks and citation omitted); *Perodeau v. City of Hartford*, 259 Conn. 729, 762-63 (2002) (concluding that an individual "may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment").

John fails to allege that Walmart terminated him or acted unreasonably during a termination process.  And even if John had adequately pled a claim for constructive termination, that would not help, because constructive termination "[does] not satisfy the termination requirement for a [negligent infliction of emotional distress] claim in an employment context," and "[c]onduct justifying the termination, or, ... compelling the resignation, is not itself the actual termination." *Grasso v. Connecticut Hospice, Inc*., 138 Conn. App. 759, 772 (2012). John's negligent infliction of emotional distress claim arises solely out of conduct occurring within a continuing employment context, which cannot provide grounds for liability for a negligent infliction of emotional distress claim.  Because John fails to allege that he was terminated and that he suffered emotional distress due to Walmart's unreasonable conduct during a termination process, he has failed to state a claim for negligent infliction of emotional distress.  Accordingly, I grant the motion to dismiss his negligent infliction of emotional distress claim.

### E.  Count Six: Negligent Hire, Supervision and Retention

John alleges that Walmart failed to hire or supervise competent employees and that Walmart's failure to supervise Rhine led to John's injuries.  ECF No. 24 ¶ 182, 184.   Although this claim is, like many of John's other claims, pled largely in conclusory terms, the only argument Walmart advances against it is that this claim, like the negligent infliction of emotional distress claim, fails because it is not based on an employment termination.   ECF No. 16-1 at 26-27.  Yet while some judges on this Court have agreed with that argument, *see Antonopoulos v. Zitnay,* 360 F. Supp. 2d 420, 431 (D. Conn. 2005) (holding that *Perodeau* "clarif[ies] that ... Connecticut bars all negligence-based emotional distress claims occurring within a continuing employment context" and applying *Perodeau* to a negligent supervision claim); *Marino v. EGS Elec. Grp., LLC*, No. 3:12CV518 JBA, 2014 WL 1289453, at *12 (D. Conn. Mar. 31, 2014) (same); *Nadesan v. Citizens Fin. Grp.*, 2015 WL 13358454, at *10 (D. Conn. Dec. 11, 2015) (applying *Perodeau* to a negligent hiring, retention, and supervision claim), I have rejected it where the negligent hiring, supervision, and/or retention claim is brought against the employer, as it is here, rather than against a supervisor or co-worker. Last year, in *Watson v. Wheeler Clinic, Inc*., 2022 WL 2916825 (D. Conn. July 25, 2022), I found that "negligent supervision, hiring and retention claims against *employers* do not implicate all the same policy concerns" identified by the Connecticut Supreme Court in *Perodeau* as grounds for barring non-termination, negligent infliction of emotional distress claims in the employment context, and that "many Connecticut trial courts have entertained employees' negligent supervision claims arising from conduct occurring in the context of an employment relationship, even when the injuries have been emotional."  *Id.* at *12-13.  I concluded that it was "not at all clear," that, if faced with the issue, the Connecticut Supreme Court would disagree with the well-established line of state

trial court decisions recognizing such claims.  *Id.*  Therefore, for the reasons set forth in *Watson*, I decline to dismiss John's negligent hiring, supervision, and retention claim on this ground.

## V.       Conclusion

For the foregoing reasons, Walmart's motion to dismiss is granted as to all claims except the hostile work environment claim and the negligent hiring, supervision, and retention claim. Because the parties have already conducted some discovery in this case, but have filed various motions seeking additional time to conduct discovery, and because I recently stayed the case to complete work on this ruling, I will discuss with counsel whether to set a revised schedule for the case, with a relatively brief period for discovery, at a telephonic status conference scheduled for Thursday, March 9, at 1pm.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:  March 3, 2023
          Hartford, Connecticut

24